Council, before you begin, just a matter of housekeeping. Is there any reason that these cases need to be argued separately? Your Honor, in our view, the cases do not need to be argued separately because, at least with respect to the employer's appeal, the legal issue is the same. The factual findings by the board in both cases are the same. And you represent both Green Valley Ranch and the Sunset Station? That is correct, Your Honor. With respect to the union's appeals, Your Honor, the issues are somewhat different between the GVR appeal and the Sunset appeal. But with respect to the employer's appeals, although the records are not literally identical because they're different facilities with some different witnesses, the legal issues and factual findings are the same in the employer's view. Let me turn to the NLRB. Is there any reason why these cases can't be consolidated informally right now into a single argument? Okay. Mr. Rosenfeld, is there any reason why you can't present? You've got three minutes in two cases. Is there any reason you can't cover the issues that you need to in that time? Okay. So here's what we're going to do. We're going to take the arguments. We're going to consolidate the arguments informally right now. If for some reason you think that we have not been able to adequately cover what you have in your allocated time, the Court will be generous with its time. But let's not duplicate things that don't need to be duplicated. Thank you, Your Honors, and good morning. I represent the employers, GVR and Sunset, and I would like to reserve five minutes for rebuttal, please. Your Honors, the Board applied an incorrect legal standard to draw an unreasonable legal conclusion from the undisputed facts. As a matter of law, the employer's slot technicians are guards under Section 9B.3 of the National Labor Relations Act. The Board's decision should be reversed outright, and its certification of the union should be vacated. First, the Board applied the wrong legal standard. This legal error alone requires at a minimum vacating the Board's decision. This legal error is stated most clearly in the Regional Director's Certification Decision at ER 36. Quote, as held in Boeing, a guard would be expected to confront people, not merely report to the employer his or her findings. This rule, Your Honors, is inconsistent with the statute, the Board's own case law, and the precedent of other circuits. What's your best case that you're going on, for your side? Your Honor, our best case is the D.C. Circuit's decision in Bellagio, and a close second would be the Board's own decision prior to Boeing in the MGM Grand Hotel case, where in both of those cases, there were no obligations to directly confront people suspected of violating the rules. Yet, the D.C. Circuit and the Board found, based on those facts, that the activities of those employees were an essential step in the process of enforcing the employer's rules. And that is not the legal standard that the Board applied here, Your Honor. Rather, the responsibilities that were gleaned from the Boeing decision and then artificially grafted onto the statute. First, at S.E.R. 60, the regional director in the D.D.E. decision said, guard responsibilities include those typically associated with traditional police and plant security functions. The Eighth Circuit has said that there's no reason to believe that Congress intended to limit the word guard in the statute to those traditional plant and police-like functions. And then the Board said at S.E.R. 61 in the GVR case that the technicians do not perform any of the traditional guard responsibilities identified by the Board in Boeing, and that was a fundamental reason why the Board said that the slot technicians are not guards. The second error that the Board gleaned from Boeing was to say at S.E.R. 60, a reporting Your Honor, that requirement can be found nowhere in the statute. Nowhere does the statutory language which says any individual employed as a guard to enforce against employees and other persons rules to protect property of the employer limit rules enforcement to physical confrontation. And likewise, the Board's own prior decisions in MGM Grand Hotel, Wright Memorial Hospital, and A.W. Schlesinger said very explicitly, it is not essential that there be any physical confrontation involved. It's enough to monitor and report so long as you are performing an essential step. You know, there's, I mean it strikes to me that aside from confronting people that the employees in the Bellagio were doing things that would be sort of traditional detective work, even if it wasn't sort of the regular work, it was sort of gumshoe kind of work where you're monitoring surveillance equipment, you may be asked to set up a sting on somebody, discretion was required, loose lips were going to sink ships here. And it strikes me that the difference between the surveillance techs in Bellagio and traditional guards is sort of the difference between drone pilots and regular pilots, that is regular pilots, fighter pilots will have, will confront other planes and so on, but we wouldn't consider drone pilots not to be military or soldiers just because they're sitting behind a computer. You've got some folks here who are not involved in those sting operations. They may be required to speak up if they see something, but they're not being asked to exercise the same kind of discretion that the techs were in the Bellagio case. Your Honor, it is true that in this case we don't have the same type of colorful fact of sting operations that we did in Bellagio, but even in Bellagio, the surveillance techs were simply involved in setting up the cameras and installing them, maintaining, moving them. They didn't actually The DC Circuit made it very clear that's not all they did. They talked about control of the camera. In fact, I think they used a phrase very much like making the point that's not all they did. The DC Circuit's decision emphasizes that they were considered, quote, key employees under Nevada's gaming regulations, that they frequently participated in targeted investigation of other employees. I guess share Judge Bybee's concern that the slot technicians you're talking about here really aren't any different from any other employee of the casino who's presumably intended to act in the employer's best interest and to speak up if they see something. Your Honor, the slot Everybody's a guard under that standard. Your Honor, the slot technicians here are different from other employees because the slot technicians have very specific responsibilities relating to the investigation of fraud and theft, and whereas the surveillance techs in Bellagio were working with cameras, what the slot techs here are working with are the internal electronic operations of the machine, and in the same way that the cameras in Bellagio are the visual eye in the sky, the internal electronics of the machine give you the answers to a lot of these questions. And the bartenders are the ones that actually look at the customer's ID. The fact that you've got some role in protecting the employer, enforcing the law, doesn't make you a guard. Your Honor, but it is not merely some role. We said in our briefs that among the slot tech's duties would involve enforcing rules against underage gambling and drinking, and we agree that those responsibilities generally don't differentiate the slot techs from other employees, but what does differentiate the slot techs from bartenders and servers and cocktail servers that the employer has not treated as guards is their specific essential role. The board found at SCR 59 that it is an essential role that only the slot techs are trained and equipped to perform in investigating fraud and theft, and thereby enforcing rules to protect the employer's property. And in that sense, Your Honors, the slot techs are very much like the surveillance techs in Bellagio. Returning to the D.C. Circuit's decision, the D.C. Circuit said that the techs do not themselves observe, report, and respond to fraud and theft, and therefore not dispositive. They are essential to the process. The same thing is true, Your Honors. I guess I'm still not, I don't hear what makes the slot technicians so essential other than the fact that they carry the keys. Your Honor, they carry the keys, which are the proverbial keys to the kingdom in terms of protecting the machines from fraud and theft. They also have technical expertise that enables them to determine whether a payout was made legitimately, or was the product of some counterfeit currency, or perhaps an electronic device that was used to manipulate the machine. Or a customer saying, there was a malfunction, or I won, it showed credits or winnings here that I didn't receive. And the record says, and again, the board itself found, at S.E.R. 59 of the GVR case, that the slot techs are essential in detecting certain types of fraud against the employer. And in addition to applying the wrong legal standard of bowing, which at a minimum, Your Honors, requires a remand, it was essential to the board's decision here that they applied a legal standard that says you must physically confront guests. Who else, who else on the casino floor is considered a guard? Your Honor, the record here The people in the cages that are cashing in winnings, are they considered guards? Your Honor, the record here doesn't indicate whether those individuals Okay, then, the record may not indicate, do you know the answer to the question? Your Honor, I do not know offhand the answer to that question. If I can provide the answer in rebuttal, I will. However, we do know that the, from, again, not from this record, but from other cases, as well as from the composition of the bargaining unit here that includes non-guards, that the employer hasn't sought to include bartenders, servers, many other types of employees in the guard category, and what makes the slot technicians I think this goes to Judge Clifton's question, you know, who's not a guard under the broad definition that you're asking here? Your Honor, as an example, if somebody is not involved in enforcing rules to protect property and patrons, that person Who would that be? What employee has no responsibility to enforce rules? Your Honor Is there such a person? I don't think there is. Presumably their obligation to their employer is to help enforce the rules and protect the property of the employer. Everybody's a guard. A server, somebody who is cleaning rooms who discovers that somebody's been smoking probably got an obligation because they're probably going to hit them with a fine for smoking in a room that's a non-smoking room. And, Your Honor, let's assume that as correct. One aspect of the legal standard here that draws a distinction between those types of employees and the slot technicians here, the surveillance techs in Bellagio, as well as the ambulance drivers, shuttle van drivers, hospital maintenance workers in the Board's earlier cases, is the minor and incidental standard. The employer has not objected to the Board's use of the minor and incidental standard as a way of reading the statute reasonably, to not create an absurd result, to give effect to the term as a guard in the statute. So if you have a bartender or a server who, as Your Honors have said, it is reasonable to assume they will have some responsibility for enforcing the employer's rules. As the record shows, all employees have at least some responsibility if they're aware of underage gambling or underage drinking to do something about it. In a perfect world where everybody's honest and nobody tries to cheat, you wouldn't need security cards or the video surveillance system, but you'd still need the slot technicians to make the machines work so you could collect all the money that people will pour into slot machines. So these people, I would say their main reason for existing is to keep those slot machines working. Now, that may include, arguably as a minor and incidental part of their function, making sure that somebody didn't jimmy the machines somehow. But they're going to have the slot techs one way or the other, even if everybody's honest, won't they? Yes, Your Honor, but there are three... Your Honor, it is not minor and incidental for three reasons. First, the board's own case law, as well as the other court of appeals precedent, has made clear that it doesn't matter if security, protecting the employer's property, enforcing rules, is not the only function of the employee. That's well established that an employee can have other functions. They'd be there anyway, and the security guards, as they are traditionally understood, wouldn't have to be there, because in my presumed world, everybody's honest and nobody's trying to cheat. I think that's a big difference. But, Your Honor, that is not the legal standard, and in both Bellagio and MGM Grand Hotel, the employers did have separate security forces. In Bellagio, not only that... And they were guards, including the video techs that didn't confront people. That's what distinguishes the security department from the slot technician department. But, Your Honor... There's nothing inconsistent about that. Your Honor, that distinction is just a distinction in labels and not a distinction in substance. Not really. I just hypothesized a world where you don't need guards, so you don't have this problem at all. You still need the slot technicians. But, Your Honor, the statutory standard here is not whether these jobs would still exist in a world where everyone is honest. The statutory standard is, is this person employed as a guard to enforce against employees and other persons rules to protect the employer's property? And here, the slot techs indisputably meet that standard, because in addition to their functions of maintaining, repairing machines, they are also, as the record extensively shows, and as the board itself extensively found, they are integrally involved and uniquely involved in enforcing the employer's rules against theft and fraud. One way to look at this would not be so much, would we still have slot techs if everyone were honest, but rather to look at it and say, if we didn't have slot techs, would the employer be able to effectively enforce its rules against theft and fraud? And not only does the record show... There is no theft and fraud in my world. They'd still employ the slot techs because they got it, and I have somebody that makes the machines work. Your Honor, but that hypothetical world does not mirror the statutory standard. For example, in these earlier board and D.C. Circuit cases, you would still have the firefighters in McDonald and BPS, even in a world where... And firefighters aren't guards. Your Honor, the Eighth Circuit in those cases found that on those records, the firefighters were guards. And even in a world where everyone abided by no-smoking rules and didn't let unauthorized persons on the premises and locked fire doors, even in that world, you would still need firefighters. But yet the Eighth Circuit says... The fires were started by lightning strikes, not necessarily by fraud. I don't want to keep belaboring this, and I want to make sure you... I suspect Judge Bybee will give you some more time because I've eaten up the time you tried to set aside for rebuttal. But it doesn't seem irrational to me to draw a line between what the slot technicians do and guards, as that term is customarily understood. And, Your Honor, if I may say one more thing, please, before stepping away. In another world, it may not be irrational on a proper legal analysis to draw that conclusion. However, here, the board's decision can't stand because, first of all, the board never applied the proper legal standard. So even if what Your Honor has hypothesized is intended to reflect your view of the proper legal standard, the board never did that here. And, therefore, the only thing that can happen would be to vacate the board's decision. And also, Your Honor, there was never a finding that the fraud and theft prevention, rules enforcement functions of the slot tech was minor and incidental. The only way the board made its finding that security functions were minor and incidental was after it first improperly relied on Boeing to narrow the scope of security and functions to apply to this record here only include things like enforcing rules against underage drinking and gambling. And as Your Honors can see, those two items are listed ninth and tenth in the list of things that the slot techs do to enforce rules to protect the employer's property in GVR's brief. Thank you, Your Honors. Thank you. Mr. Kapanikowski, I will give you some additional time for rebuttal. Thank you, Your Honor. Ms. Beard. Good morning, Your Honors. I'm Heather Beard for the board. So in this case, substantial evidence supports the board's finding that the company didn't establish the slot technicians are guards under the act. As you all were discussing, the slot technicians are primarily responsible for installing, maintaining, and repairing the employer's slot machines. And what the company has the burden of showing in this case, which they don't challenge, is that these employees, the statute says, enforce rules against employees and other persons. They have not demonstrated that any of their enforcement of rules against certainly not any other employees or other persons is the primary responsibility, unlike their maintenance, installation, and repair of the machines. What's the distinction between this and the Bellagio case? Sure. There are two key distinctions between this case and the Bellagio case. The first is, as Your Honors were discussing before, in the Bellagio case, there was evidence of the statutory requirement that the surveillance technicians that they were called in Bellagio, that those surveillance technicians actually enforce rules against employees. There is not evidence in this case that there is any enforcement of any rules against employees, let alone the extent of which there was in the Bellagio involving the placement of the cameras in what were called sting operations. And so on this record, the Board reasonably found, based on substantial evidence, that this case is different from the Bellagio in that way. The second way that it's clearly different from the Bellagio is, I think, in some of the language used in Bellagio about, even with the quote from the movie Casino, everyone is watching everyone is watching everyone in the Bellagio. This was an all-encompassing security and surveillance case in Bellagio, where what the individuals who were slot techs in the Bellagio, sorry, the individuals who were the surveillance technicians there were doing, is they were key and essential steps in assisting the surveillance and security folks. On this record, and in Sunset, in both GVR and Sunset, there is no evidence that the slot technicians are even allowed in the security room, or allowed in areas where security is. So the second distinction between this case and Bellagio is the fact that you've got the all-encompassing surveillance and security environment in Bellagio. So we posit that this case, on its facts, is significantly different from the Bellagio case. We also posit, as we did— Was there any evidence, going back to your first distinction, was there any evidence with regard to whether the casino ever operated a sting operation with regard to slot machines, as to whether the slot technician may have been involved in setting somebody up? No. I don't believe there was any evidence about that. In fact, in one of the cases, I think it's in GVR, there was evidence that security folks were involved in sting operations. For example, in going up to people's rooms and those sorts of things. But the slot technicians have absolutely nothing to do with that. Okay. Now, one of their functions, and I think this is accepted, is that they're supposed to look out to make sure that when the slot machine shows the cherries or whatever they show these days, that it's a legitimate win, that somebody hasn't figured out how to beat the machine, or how there hasn't simply been a mechanical or electronic malfunction of some kind. Is there any evidence with regard to whether efforts to fraudulently beat the machine may have included participation by or cooperation with other employees of the casino? That is, so that the slot technicians are looking at other employees as potential participants in a fraud. Right. There's no evidence that that has ever happened in either one of these casinos. Now, the other point that you made when you were asking the question was about whether or not, you said the slot technicians are sort of looking out for there to be if the three cherries are wrong. And what I'd like to point out is another distinction between this case and some of the other cases. In Bellagio here, there's no evidence that slot technicians are actually looking out for the type of slot machine problems that are occurring. They are called over in some instances by a customer when they're doing what their main job is, which is customer facing. I believe the quote was a seamless experience in Sunset, as they're supposed to give the customer. They're called over if the customer says, I put this bill in the bill validator, and I put in $100, and it's only showing $20. Or they may be called over for anything else that the customer may ask. Or when a Nevada Gaming Commission board person comes over, they may be asked to come over. But they're not actually, there's no evidence that they're patrolling the casino or looking specifically for that type of fraud. Now, of course, they can see it, like any other employee, as you were discussing. If you see something, say something. But all the employees on the gaming floor are responsible for making sure of those types of, that there isn't a problem like that. And as the case law that we cite in our briefs indicate, that is not something that would make an employee a guard. And indeed, here, the minor and incidental standard, which they aren't challenging, was absolutely something found by the board in this case. Both regional directors and a firm by the board in both cases found that any guard-like responsibilities that these individuals have is minor and incidental to their primary function, which is servicing and installing the maintenance of the machines. And so not only is this case different from Bellagio, but we talked a bit about, my colleague talked about the test that's applied. The board applied the wrong test. The board did not apply the wrong test. The board took 9b-3, the statute, and it looked to the case called Boeing, in which it interpreted what 9b-3 says. And in interpreting 9b-3, it looked to whether or not these employees were enforcing rules against employees, and the statute is conjunctive, employees and other persons. What the board found is, no, they didn't. What the board found is that definition, although the Eighth Circuit may not have agreed, what the board found is that in order to have a guard-like status, there needs to be not only functions of enforcing rules, but that needs to be in the context of security. And in Boeing, the board actually took on MGM and A.W. Schlesinger and the Wright Hospital case and distinguished them, and we stand by that. What the board found is, although there may have been some reporting functions in those cases from the ambulance drivers and the maintenance employees to take a look at what was going on, in those cases they also did not have any non-minor incidental security responsibilities. And that's exactly what we have here in this case. We do not have the slot machine technicians having any, and again, it's the company's burden, which they didn't demonstrate, that they do anything that is more than minor incidental in terms of enforcing rules against employees and other persons. And it's both in GVR and in Sunset that the company failed to meet its burden. And unless you have any other questions about that, I'd like to move on to the challenges that the union has made. In both cases, we believe our orders should be enforced in full. With regard to case number one, GVR, the union had argued and we had filed a motion to dismiss with regard to aggrievement. The union had argued that the board should have decided in an information request, and as we stated in our briefs, the general counsel who controls the complaint did not allege an information request violation in that case, and therefore the union got all the relief to which it was entitled. But even assuming that, Your Honors, don't dismiss that case for lack of aggrievement, the board's position is the board actually went ahead and did decide in a different case, which is now pending awaiting this Court's decision in the D.C. Circuit, and decided that the information request that the union wanted was a valid one and should be provided should this Court decide favorably that these employees are not guards. And I guess all I would say with regard to the union's challenge in the second case in Sunset is that this Court has long held that when there are remedies that are not extraordinary, the board is not required to give an extraordinary explanation. And we believe that the board ordered in the Sunset case where this is challenged, the requisite and standard remedies when a company fails to bargain with a unit of employees, which is in order to bargain with the employees upon request, and in Sunset to provide the information request that was part of the complaint. So we do not believe that the union showed there was any reason to depart from the board's normal, standard remedies in this case. So unless you have other questions, we'd seek enforcement. Thank you, Ms. Beard. Mr. Rosenfeld? Thank you. As to the union's petitions for review, we'll rest on our briefs. Ms. Beard is correct that as to the GVR case, there's a substantial issue about whether the issue was raised properly about the remedy. She's also correct that that information issue is pending in the D.C. Circuit. We don't think the case should be dismissed. It's a question of whether we're entitled to the remedy or not. We are aggrieved. And as to the second case, again, the only reason we really argued this was because this is the fifth case now where this employer has refused to bargain over the slot tax. We think it's enough, enough, and that's why we're seeking some additional remedies. I want to address what slot tax really are because, Judge Bybee, you analogized this to drones versus drone pilots. Last week I've been trying to think of what's an example, and I saw a YouTube of robots running around an Amazon factory. I thought to myself, that's kind of the example because when the robot goes the wrong direction or picks up the wrong items or too many items, somebody has to fix it. And that's what slot tax do. They fix machines. They're not customer facing. They're machine facing. And that's the total difference between slot tax and surveillance tax because slot tax, in this case and both cases, what happens here is there isn't really no reporting function. It's actually the reverse. What the record shows is that station casinos on a corporate basis prepares reports every day. For example, a report about bill validators that don't seem to be functioning under their standards. And there are also reports every day about slot machines that are paying out more often than other slot machines. And so every day the slot tax get these reports, go look, and all they do is open the machine up, check it electronically, and if it's accurate, they report that it's accurate. So they don't report. They are reported to go check out the machine. And this gets to what I think is sort of the fundamental, if not easiest, answer to the petitions or the refusal to comply by the employer. The statute says that in order to be a guard, you must both enforce rules as to employees and other persons. Now, I'm not conceding that maintenance tax enforce any rules as to employees. What they really do is take these almost 4,000 slot machines and enforce the rules as to the slots. If the slot is sort of misbehaving, if the mechanical part or the electronic part isn't functioning, they fix it. They don't enforce it as to the others. But what's totally missing in this record, and your honors are asked this question of counsel, is there's no evidence whatsoever that slot tax enforced any rules as to employees. Because in the Bellagio case, what you had were dealers who handled cash and cards. They set up cameras to watch the dealer to make sure they're acting appropriately. So they're watching them. Here you have 4,000 machines that operate electronically that the slot tax do not look at. They simply go and fix when requested to do so. So what's missing is the statutory requirement that slot tax enforce rules as to employees as opposed to guards. And, Judge Fowler, you asked Ms. Beard about the Bellagio case. I think the D.C. Circuit was really clear that the surveillance tax in that case enforced rules as to other employees. In fact, used the word sting operation. And that regularly the Bellagio surveillance tax were involved in sting operations. Here in both records, there's no evidence that a slot tax has ever been involved in a sting operation. And that makes a lot of sense. Because the slot tax are not part of the security department. They're part of the slot department. And to be clear, the slot department includes the slot tax, who maintain the machines to give a seamless experience to the patrons, and the GSAs, who are the guest service advisors or guest service ambassadors, who walk the casino floor and help patrons use the machines. So it's part of the entertainment of the casino, not the security of the casino. The slot tax are out of the floor to fix a machine, to make it work. If there's an issue with it, they investigate it and fix it. So they serve the opposite function of security in Bellagio or in this hotel, this casino, because what they do is ensure this seamless experience for patrons. They're really part of the entertainment of the casino as opposed to the security function. So I think that is where I would focus this case on, the failure to enforce rules against employees. And I know it sounds silly, but I keep thinking of robots. You know, when the robot's messing up, you go enforce the rule as the robot. You fix the robot. You fix the slot machine. And that's sort of the end of the case, it seems to me. Thank you. Thank you, Mr. Rosenfeld. Mr. Panikowski, you've got time. Pardon? I'll give Mr. Panikowski some time. Let's put two minutes on, please. Thank you, Your Honors. The board and the union have created yet another legal requirement today that is not found in the statute. They would both require evidence of actual enforcement against employees. However, as the courts and the board itself have recognized, the purpose of the statute is to minimize the danger of divided loyalty. It does not require actual evidence of at least one past sting operation or similar investigation. No, but evidence would be relevant. If, in fact, there were illustrations of actual enforcement against other employees, the dangers that apparently lie behind the statutory provision would be realized. And if there's no evidence of that danger, it suggests that maybe that's not really what the slot technicians are there for. Your Honors, having that evidence would make the case even stronger. It may simply be reflective of the fact that the employer's other employees have been very honest. And not having the evidence makes the case weaker. I don't think there's an argument that's established as a requirement. You've got to check off that box. It's part of the evidence in front of the board. And, Your Honor, we agree that's not a requirement. The board and the union would impose that requirement. But what we also have in the record, Your Honor, is that S.E.R. 86 and 95, we know that other employees who are not slot technicians can game. They can use these very same game machines. And, therefore, everything that the record says about the slot technicians' participation in an essential step of rules enforcement against customers applies also to employees. Also, in Your Honors' hypothetical world where everyone is honest, we would still need the slot techs to perform these essential fraud and theft rules enforcement functions because the Nevada Gaming Control Board is able to call for an investigation when certain triggers are met. And the record is replete with evidence, including from a former hearing officer of the Nevada Gaming Control Board, that the slot techs are an essential part of helping law enforcement in their investigations. And there is testimony that the state regulatory authority hypothetical, we don't need law enforcement because nobody is trying to defraud the casino. Your Honor, I mean, I realize my hypothetical is not the real world, but it seems to me what you're offering up and pointing at the board and law enforcement is something that suggests that their principal purpose is something other than what it really seems to be. And, Your Honor, that is not the case. And the test is also not whether it's the principal or primary purpose. The test is, one, is it an essential step in the enforcement of the employer's rules to protect property? And, two, is it more than just a minor and incidental part of their duties? And those standards have not been met here. And finally, Your Honor, in answer to an earlier question, our understanding is that the cage and cash handlers at the employer's properties are represented by a non-guard union. As a result, Your Honors, because the board applied the wrong legal standard, the case must be vacated at a minimum. And it's also true that the only rational result under the correct legal standard is to reverse outright because each of the four facts that the board said were present in Bellagio but not present here are actually present in this case, supported by the record and explained in the employer's briefs. Thank you, Your Honors. Thank you. We thank all counsel for the argument. Local 501 v. NLRB is submitted in both cases. With that, the court has completed the oral argument calendar, and we are adjourned for the day. All rise.
judges: Siler, Clifton, Bybee